UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN SAMUEL BURTON, #358780,

        Petitioner,

                                    CASE NO. 2:14-CV-11760
v.                                 HONORABLE VICTORIA A. ROBERTS

DEWAYNE BURTON,

        Respondent.
_____/

### OPINION AND ORDER DENYING THE AMENDED PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

**I.    Introduction**

This is a *pro se* habeas case brought pursuant to 28 U.S.C. § 2254.  Michigan prisoner John Samuel Burton ("Petitioner") was convicted of two counts of first-degree felony murder, MICH. COMP. LAWS § 750.316(1)(b), two counts of assault with intent to commit murder, MICH. COMP. LAWS § 750.83, two counts of armed robbery, MICH. COMP. LAWS § 750.529, assault with intent to commit armed robbery, MICH. COMP. LAWS § 750.89, felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court.  He was sentenced, as a fourth habitual offender, MICH. COMP. LAWS § 769.12, to concurrent terms of life in prison without the possibility of parole on the murder convictions, concurrent terms of 40 to 60 years in prison on the assault with intent to murder and armed robbery convictions, a concurrent term of 20 to 40 years in prison on the assault with intent to commit armed robbery conviction, a concurrent term of 5 to 15 years in prison on the felon in possession conviction, and a consecutive term of 2 years in prison

on the felony firearm conviction in 2010.

In his pleadings, as amended, Petitioner raises claims concerning the admission of jail audio recordings and mug shot evidence, actual innocence/miscarriage of justice, the conduct of the prosecutor and the use of allegedly false evidence, and the effectiveness of trial counsel for failing to object to the admission of the jail audio recordings and the mug shot, for failing to investigate/present three alibi witnesses, and for failing to seek suppression of witness identifications due to allegedly suggestive pre-trial identification procedures. For the reasons set forth, the Court denies and dismisses with prejudice the Amended Petition for a Writ of Habeas Corpus. The Court also denies a Certificate of Appealability ("COA") and denies Petitioner leave to proceed *in forma pauperis* on appeal.

## II.    Facts and Procedural History

Petitioner's convictions arise from his and his co-defendant's armed robbery of a group of drug dealers that resulted in the fatal shooting of two men and an injury to a third man in Detroit, Michigan on November 20, 2002. Petitioner and his co-defendant wore masks during the incident, but Petitioner's mask slipped down and three eyewitnesses identified him as one of the perpetrators. Petitioner was arrested on other charges in Pennsylvania in 2006 and extradited to Michigan in 2009.

At trial, the prosecution presented testimony from Antonio Miller, the surviving shooting victim, Tanisha Talton, who was with the victims at the time of the shooting, and William Thomas, who also witnessed the shooting, all of whom identified Petitioner as one of the two gunmen, as well as testimony connecting Petitioner to a piece of identification stolen from one of the victims. Additionally, the prosecution presented audio recordings of a telephone conversations between Petitioner and an unidentified woman that occurred while he was in jail in Pennsylvania in 2007 and

2008. In those recordings, Petitioner told the woman, who referred to him as "Carlos," that he might have "too many enemies in the D" to return there, that he was "on the run for bodies," and that he was trying to raise $35,000 for new identification. The prosecutor also presented evidence of Petitioner's flight to Pennsylvania, his use of the aliases "John Carlos Miller" and "Michael Thomas" when stopped by police in Pennsylvania in July and September, 2006, and his 1998 Pennsylvania mug shot. *See* Pet. App. Brf., pp. 3-9; Pet. Supp. App. Brf., pp. 1-5.

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising the following claims through counsel and in a *pro per* brief:

I.      Trial counsel was ineffective for not objecting to the Pennsylvania jailhouse tapes on the ground that the prosecution failed to authenticate them. Alternatively, the trial court committed plain error by admitting them into evidence.

II.     The trial court erred in allowing the prosecution to mislead the jury with false evidence of a Pennsylvania county jail mug shot. Alternatively, the trial court committed plain error by admitting it into evidence.

The court remanded the case for an evidentiary hearing on the audio recordings, but ultimately denied relief on those claims and affirmed Petitioner's convictions. *People v. Burton*, No. 298864, 2012 WL 4210313 (Mich. Ct. App. Sept. 20, 2012). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Burton*, 493 Mich. 952, 828 N.W.2d 44 (April 1, 2013).

On April 29, 2014, Petitioner dated his initial Petition for a Writ of Habeas Corpus for filing with this Court raising the same claims presented on direct appeal. On October 30, 2014, while the case was pending, Petitioner filed a motion to stay the proceedings and hold his case in abeyance so that he could return to the state courts to exhaust additional claims. On November 6, 2014, the Court granted that motion, stayed the proceedings, and administratively closed the case.

3

On November 13, 2014, Petitioner filed a motion for relief from judgment with the state trial court raising the following claims:

I.    He presents new evidence that quantitatively and qualitatively exceeds that required by *Schlup*.

II.   The Michigan Legislature, with the promulgation of MCL 769.26, 770.1, and 770.2, authorizes the court to order a new trial where the trial court recognizes that a miscarriage of justice has occurred.

III.  He was deprived of his state and federal constitutional due process right to a fair trial where the prosecutor intentionally misled the jury by presenting false evidence.  Alternatively, defense counsel was ineffective for failing to object to the introduction of this false evidence.

IV.   He was denied his Sixth Amendment right to the effective assistance of trial counsel where counsel failed to investigate several witnesses that would have provided testimony that he was not involved in the shooting that resulted in his convictions.

V.    He was denied his Sixth Amendment right to the effective assistance of counsel where counsel failed to move to suppress the unnecessarily suggestive pretrial identification procedures concerning Tanisha Talton and William Thomas.

      A.    Where two other witnesses had identified him resulting in an arrest warrant being issued for him, and where at least one of these witnesses visited with Antonio Miller in the hospital before police interviewed Miller, the subsequent use of the one photograph (mug shot) to show Miller was unnecessarily suggestive.

VI    He was denied his Sixth Amendment right to the effective assistance of appellate counsel and his Fourteenth Amendment right to a full and fair appeal of right where appellate counsel omitted significant and obvious issues on direct appeal that were clearly stronger than the issues counsel did raise on direct appeal.

VII.  The assessment of $1,672 in court costs as part of his sentence must be vacated as those costs are not authorized to be imposed in this case by a specific legislative act.

The trial court denied relief on those claims based upon Michigan Court Rule 6.508(D)(2) and (3),

and on the merits. *People v. Burton*, No. 09-028803-FC (Wayne Co. Cir. Ct. Oct. 5, 2015). Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals raising the same claims, which was denied because Petitioner "failed to establish that the trial court erred in denying the motion for relief from judgment." *People v. Burton*, No. 332281 (Mich. Ct. App. June 27, 2016). Petitioner then filed an application for leave to appeal which the Michigan Supreme Court, which was denied pursuant to Michigan Court Rule 6.508(D). *People v. Burton*, 500 Mich. 923, 888 N.W.2d 83 (Dec. 28, 2016).

Petitioner thereafter moved to reopen this case and proceed on an Amended Petition for a Writ of Habeas Corpus raising the following claims:

I.     Ineffective assistance of counsel for not objecting to tape recordings. The trial court erred in admitting them.

II.    The trial court erred in allowing the prosecution to introduce knowingly false evidence of a 1998 Pennsylvania mug shot.

III.   Actual innocence/miscarriage of justice has occurred (newly-presented evidence).

IV.    Prosecutor misconduct for misleading the jury with false evidence and stating facts not in the record.

V.     Ineffective assistance of trial counsel where he failed to investigate three witnesses who would provide testimony that he was not involved in the shooting.

VI.    Ineffective assistance of trial counsel for failing to move to suppress the suggestive identification procedures of William Thomas and Tanisha Taton.

VIII.  The procedure for Antonio Miller was also suggestive.

VIII.  Trial counsel was ineffective for failing to object to the 1998 Pennsylvania jail mug shot as false when he knew the prosecutor used the false evidence to mislead the jury. Trial counsel failed to object to the misconduct and false evidence.

On April, 24, 2017, the Court granted his request and reopened the case.  Respondent subsequently

filed an Answer in Opposition to the Amended Petition for a Writ of Habeas Corpus contending that

it should be denied because several claims are untimely, several claims are barred by procedurally

defaulted, and all of the claims lack merit.  Petitioner filed a Reply to that Answer.

## III.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28

U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use when considering

habeas petitions brought by prisoners challenging their state court convictions.  The AEDPA

provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim--
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable
>         application of, clearly established Federal law, as determined by the
>         Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of
>         the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that

contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts

that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless

arrives at a result different from [that] precedent.'"  *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)

(per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535

U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). A habeas court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of a claim "was so lacking in justification that there was an error well understood and comprehended in

7

existing law beyond any possibility for fairminded disagreement." *Id.; see also White v. Woodall*, 572 U.S. 415, 419-20 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, _ U.S. _, 135 S. Ct. 1372, 1376 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, _ U.S. _, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71-72. Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of "clearly established law" are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" and "[i]t therefore cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam); *see also Lopez v.*

*Smith*, _ U.S. _, 135 S. Ct. 1, 2 (2014) (per curiam).  The decisions of lower federal courts may be useful in assessing the reasonableness of the state court's decision.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas review. 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption with clear and convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).  Habeas review is also "limited to the record that was before the state court."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

**IV.  Discussion**

    **A.  Timeliness**

As an initial matter, Respondent contends that habeas claims III through VIII are barred by the one-year statute of limitations applicable to federal habeas actions.  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq*., includes a one-year period of limitations for habeas petitions brought by prisoners challenging state court judgments.  The statute provides:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--

    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral

review; or

    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). A habeas petition filed outside the proscribed time period must be dismissed. *See Isham v. Randle*, 226 F.3d 691, 694-95 (6th Cir. 2000) (dismissing case filed 13 days late); *Wilson v. Birkett*, 192 F. Supp. 2d 763, 765 (E.D. Mich. 2002).

Petitioner's convictions became final after the AEDPA's effective date. The Michigan Supreme Court denied leave to appeal on direct appeal on April 1, 2013. Petitioner's convictions became final 90 days later, *see Jimenez v. Quarterman*, 555 U.S. 113, 120 (2009) (a conviction becomes final when "the time for filing a certiorari petition expires"); *Lawrence v. Florida*, 549 U.S. 327, 333 (2007); S. Ct. R. 13(1), on June 30, 2013. Accordingly, Petitioner was required to file his federal habeas petition by June 30, 2014, excluding any time during which a properly filed application for state post-conviction or collateral review was pending in accordance with 28 U.S.C. § 2244(d)(2).

Petitioner dated his original habeas petition on April 29, 2014. At that point, 303 days (about 10 months) of the one-year period had expired and 62 days (about two months) remained. Petitioner dated his motion to stay the proceedings and hold his petition in abeyance on October 30, 2014 and the Court stayed the proceedings and administratively closed the case on November 6, 2014. While the one-year period was tolled as to the claims contained in the original petition, it was not tolled for any claims not so included. *See Duncan v. Walker*, 533 U.S. 167, 181-82 (2001) (ruling that a federal habeas petition does not statutorily toll the one-year period). Thus, the

one-year period expired as to any claims not included in the original petition on June 30, 2014 unless those claims "relate back" to the original petition or are subject to statutory or equitable tolling. *See Simmons v. Winn*, 361 F. Supp. 2d 719, 739 (E.D. Mich. 2019) (supplemental habeas claims filed after the one-year expired were untimely unless they related back to the original petition).

Most of Petitioner's supplemental claims do not relate back to his original petition. Under Federal Rule of Civil Procedure 15, an amended pleading "relates back" to the original pleading only if the amended claims are tied to the "same core of operative facts" alleged in the original petition. *Mayle v. Felix*, 545 U.S. 644, 664 (2005). "An amended habeas petition ... does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650. An amended petition does not relate back to an original petition simply because both petitions arise from the same trial and convictions. *Id.* As explained by the Supreme Court, if "claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance." *Id.* at 662.

In this case, habeas claim III, a portion of habeas claim IV, and habeas claims V, VII, and VII, which concern actual innocence, prosecutorial misconduct (to the extent it is unrelated to the jail audio recordings and the 1998 mug shot), ineffective assistance of trial counsel for failing to investigate alibi witnesses and for failing to seek to suppress three allegedly suggestive identifications, do not arise from the same set of operative facts as the claims in Petitioner's original petition, which concern the admission of the jail audio recordings, ineffective assistance of counsel

11

related to that evidence, and the admission of the 1998 mug shot. As such, they do not relate back to the original petition and are untimely. *See, e.g., United States v. Hernandez*, 436 F.3d 851, 858 (8th Cir. 2006) (petitioner's new specific claims of ineffective assistance did not relate back to his previous unrelated claims); *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (petitioner did not satisfy relation back standard where new petition asserted ineffective assistance claim based upon a different type of attorney error than asserted in original petition). The part of habeas claim IV alleging prosecutorial misconduct for introducing the jail audio recordings and the 1998 mug shot and habeas claim VIII alleging ineffective assistance of counsel for failing to properly object to the admission of the 1998 mug shot arise from the same set of operative facts as the claims in the original petition arguably do relate back to the original petition and are deemed timely.

Because the aforementioned supplemental claims do not relate back, the one-year period as to those claims expired on June 30, 2014. Petitioner did not seek a stay nor file his motion for relief from judgment until November, 2014 – well after the one-year period expired as to those supplemental claims. A state court post-conviction motion that is filed following the expiration of the limitations period cannot toll that period because there is no time remaining to be tolled. *Hargrove v. Brigano*, 300 F.3d 717, 718 n. 1 (6th Cir. 2002); *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000); *see also Jurado v. Burt*, 337 F.3d 638, 641 (6th Cir. 2003). The limitations period does not begin to run anew after the completion of state post-conviction proceedings. *Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001).

Petitioner neither alleges nor establishes that the State created an impediment to the filing of his supplemental habeas claims or that those claims are based upon newly-discovered evidence or newly-enacted, retroactively applicable law. Rather, he asserts that he has newly-obtained

evidence, the alibi affidavits from three friends, Tiffany Calhoun, Terri Williams, and Tammy Williams, that he believes establish his innocence. With regard to newly-discovered evidence under 28 U.S.C. § 2244(d)(1)(D), the limitations period begins when the factual predicate for the claim could have been discovered through the exercise of due diligence, not when it was actually discovered by the petitioner. *Lott v. Coyle*, 261 F.3d 594, 605–06 (6th Cir. 2001); *Brooks v. McKee*, 307 F. Supp. 2d 902, 905-06 (E.D. Mich. 2004) (citing cases). The period begins when the petitioner knows or could have discovered the important facts for the claim, not when the petitioner recognizes the legal significance of those facts. *Brooks*, 307 F. Supp. 2d at 905-06. Moreover, the start of the limitations period "does not await the collection of evidence which supports the facts." *Id*. at 906. A habeas petitioner bears the burden of showing that he exercised due diligence in discovering the factual predicate for his claims. *DiCenzi v. Rose*, 452 F.3d 465, 471 (6th Cir. 2006). The record shows that Petitioner knew of these purported witnesses and the facts underlying his alibi-related claims at the time of his trial and direct appeal in the state courts. Any delays in obtaining supporting evidence does not toll the limitations period. The aforementioned supplemental claims (habeas claims III, part of VI, V, VI, and VII) are therefore untimely under 28 U.S.C. § 2244(d).

The United States Supreme Court has confirmed that the one-year statute of limitations is not a jurisdictional bar and is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645 (2010). The Supreme Court has further explained that a habeas petitioner is entitled to equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also Robertson v. Simpson*, 624 F.3d 781, 783-84

(6th Cir. 2010). "Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Jurado*, 337 F.3d at 642 (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000)). A petitioner has the burden of demonstrating entitlement to equitable tolling. *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004).

Petitioner neither alleges nor establishes that he is entitled to equitable tolling of the one-year period. *See Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 464 (6th Cir. 2012) (pro se status is not an extraordinary circumstance); *Allen*, 366 F.3d at 403 (ignorance of the law does not justify tolling); *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) (illiteracy is not a basis for equitable tolling); *Rodriguez v. Elo*, 195 F. Supp. 2d 934, 936 (E.D. Mich. 2002) (the law is "replete with instances which firmly establish that ignorance of the law, despite a litigant's pro se status, is no excuse" for failure to follow legal rules); *Holloway v. Jones*, 166 F. Supp. 2d 1185, 1189 (E.D. Mich. 2001) (lack of legal assistance does not justify tolling); *Sperling v. White*, 30 F. Supp. 2d 1246, 1254 (C.D. Cal. 1998) (citing cases stating that ignorance of the law, illiteracy, and lack of legal assistance do not justify tolling). Petitioner fails to demonstrate that he is entitled to equitable tolling under *Holland*.

Both the Supreme Court and the Sixth Circuit have held that a credible claim of actual innocence may equitably toll the one-year statute of limitations. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013); *Souter v. Jones*, 395 F.3d 577, 588-90 (6th Cir. 2005). As explained in *Souter*, to support a claim of actual innocence, a petitioner in a collateral proceeding "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup v. Delo*, 513

14

U.S. 298, 327-28 (1995)); *see also House v. Bell*, 547 U.S. 518, 537-39 (2006).  A valid claim of actual innocence requires a petitioner "to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness account, or critical physical evidence – that was not presented at trial."  *Schlup*, 513 U.S. at 324. Furthermore, actual innocence means "factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623.  In keeping with Supreme Court authority, the Sixth Circuit has recognized that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'"  *Souter*, 395 F.3d at 590 (quoting *Schlup*, 513 U.S. at 321).

Petitioner makes no such showing.  While he cites the affidavits from Tiffany Calhoun, Terri Williams, and Tammy Williams, which claim that he was at their house at the time of the crime, he fails to show that those affidavits are newly-discovered (in that they contain information that could not have been obtained at the time of trial or direct appeal) and/or that they constitute reliable evidence of his actual innocence.  To be sure, Petitioner and the affidavits indicate that Petitioner was aware of the potential witnesses at the time of his trial in 2010, but he did not obtain the affidavits until October, 2014.  Petitioner fails to sufficiently explain why he was unable to obtain the affidavits at the time of his trial and/or direct appeal.

Moreover, the affidavits, which contain identical language and were signed nearly 12 years after the incident and four years after the trial, are inherently suspect and unreliable.  *See, e.g., Schlup*, 513 U.S. at 331; *Freeman v. Trombley*, 483 F. App'x 51, 59-60 (6th Cir. 2012) (discounting credibility of girlfriend's alibi affidavit submitted long after petitioner's trial); *Lewis v. Smith*, 110 F. App'x 351, 355 (6th Cir. 2004) (district court properly rejected as suspicious a recanting affidavit made two years after trial).  Such statements are viewed with "a fair degree of skepticism."

*Herrera v. Collins*, 506 U.S. 390, 423 (1993) (O'Connor, J., concurring); *Harris v. Smith*, No. 2:12-CV-14210, 2013 WL 3873168, *5 (E.D. Mich. July 25, 2013) ("Long delayed statements are viewed with extreme suspicion."); *see also McQuiggan v. Perkins*, 569 U.S. 383, 387 (2013) (stating that a court should consider "unjustifiable delay on a habeas petitioner's part . . . as a factor in determining whether actual innocence has been reliably shown").

Lastly, Petitioner's own self-serving assertion of innocence is insufficient to support an actual innocence claim. A "reasonable juror surely could discount [a petitioner's] own testimony in support of his own cause." *McCray v. Vasbinder*, 499 F.3d 568, 573 (6th Cir. 2007) (citing cases). Petitioner's assertion that his habeas claims have merit also does not establish his actual innocence. *Craig v. White*, 227 F. App'x 480, 481 (6th Cir. 2007). Petitioner fails to establish that he is entitled to equitable tolling of the one-year period. The aforementioned supplemental claims (habeas claims III, part of IV, V, VI, and VII) are untimely and must be dismissed.

**B.     Admission of Jail Audio Recordings/Effectiveness of Trial Counsel**

Petitioner asserts that he is entitled to habeas relief because the trial court erred in admitting the audio recordings of telephone conversations claimed to be between him and a woman that occurred between April, 2007 and April, 2008 while he was in jail in Pennsylvania. In those recordings, Petitioner told the woman that he might have "too many enemies in the D" to return there, that he was "on the run for bodies," and that he was trying to raise $35,000 for new identification. Petitioner relatedly asserts that trial counsel was ineffective for failing to properly object to the admission of the recordings. Respondent contends that these claims lack merit.

Petitioner first raised these claims on direct appeal of his convictions. The Michigan Court of Appeals denied relief finding that the evidence was properly admitted under state law and that trial counsel was consequently not ineffective. The court explained:

On appeal, defendant argues that trial counsel was ineffective for failing to object to the admission of jailhouse telephone recordings on authentication grounds, or, alternatively, that the trial court erred in admitting them into evidence. The recordings were of various phone calls made from a Pennsylvania prison between April 2007 and April 2008. The phone conversations were between a male prisoner and a female, and the prosecution asserted that defendant, who had been arrested in Pennsylvania several years after the crimes at issue here were committed, was the male heard on the recordings. Prior to trial, the trial court ruled that the recordings were admissible, rejecting defendant's argument that they were irrelevant and that any assumed probative value was substantially outweighed by the danger of unfair prejudice. At the pretrial hearing, defendant did not deny being heard on the recordings and defense counsel essentially acknowledged that the recordings indeed captured defendant's phone conversations.[1] At trial, defendant was represented by new counsel who was of the belief that the recordings had been authenticated at the pretrial hearing; therefore, counsel did not object on authentication grounds, or any grounds, when the prosecutor successfully had the recordings admitted into evidence. This Court granted defendant's motion for remand, allowing defendant to pursue a motion for new trial on the issues of authentication of the recordings and ineffective assistance of counsel. *People v. Burton*, unpublished order of the Court of Appeals, entered June 20, 2011 (Docket No. 298864). On remand, the trial court ruled that, had the issue of authentication arisen at trial, the court would have overruled any objection to admission of the recordings, given that all of the surrounding circumstances pointed to defendant as being the male heard in the phone calls. Defendant challenges that ruling on appeal, separately, and in the context of an ineffective assistance claim.

"The determination whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law[,]" which we review, respectively, for clear error and de novo. *People v. Lockett*, 295 Mich App 165, 186; 814 NW2d 295 (2012). This Court reviews a trial court's decision to admit evidence for an abuse of discretion. *People v. Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). "However, decisions regarding the admission of evidence frequently involve preliminary questions of law, such as whether a rule of

---

[1]Counsel stated, "Your Honor, the Court [sh]ould realize that this is a conversation that Mr. Burton is having with a female caller, that they're talking about different things that they were involved in [,][i]ncluding a relationship."

evidence or statute precludes admi[ssion] of the evidence." *Id*. These preliminary questions of law are reviewed de novo, and when such questions "'are at issue, it must be borne in mind that it is an abuse of discretion to admit evidence that is inadmissible as a matter of law.'" *Id*. (citation omitted).

In *People v. Aspy*, 292 Mich App 36, 45–46; 808 NW2d 569 (2011), this Court set forth the principles governing a claim of ineffective assistance of counsel, stating:

> To establish ineffective assistance of counsel, a defendant must show that (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms, (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different, and (3) the resultant proceedings were fundamentally unfair or unreliable. *People v. Toma*, 462 Mich 281, 302–303; 613 NW2d 694 (2000). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v. Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004).

"Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v. Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

MRE 901 addresses the requirement of authentication or identification and provides in relevant part:

(a) The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

(b) By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

(1) Testimony that a matter is what it is claimed to be.
* * *
(4) Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.

(5) Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.

18

(6) Telephone conversations, by evidence that a call was made to the number assigned at the time by the telephone company to a particular person or business, if (A) in the case of a person, circumstances, including self-identification, show the person answering to be the one called, or (B) in the case of a business, the call was made to a place of business and the conversation related to business reasonably transacted over the telephone.

\* \* \*

(9) Evidence describing a process or system used to produce a result and showing that the process or system produces an accurate result.

"If a tape, or any other proposed exhibit that is subject to the MRE 901 requirement of authentication, is shown to be 'what its proponent claims,' then it has been authenticated sufficiently." *People v. Berkey*, 437 Mich 40, 52; 467 NW2d 6 (1991), quoting MRE 901(a). The *Berkey* court further expressed:

> It is axiomatic that proposed evidence need not tell the whole story of a case, nor need it be free of weakness or doubt. It need only meet the minimum requirements for admissibility. Beyond that, our system trusts the finder of fact to sift through the evidence and weigh it properly. [*Berkey*, 437 Mich at 52.]

Here, there was sufficient record evidence to support a conclusion that the recordings were what the proponent prosecutor claimed them to be, i.e., recordings of defendant's telephone conversations while an inmate in Pennsylvania. Stated otherwise, there was sufficient evidence to authenticate the recordings, and any weakness or doubt regarding whether it was actually defendant conversing on the phone was a matter for the jury to weigh. We find it appropriate to begin with a discussion of the record that supports this holding.

Officer Daniel Nowak, a Pittsburgh police officer, testified that he encountered defendant on July 11, 2006, in Allegheny County, Pa., when responding to a domestic violence complaint. Nowak stated that defendant identified himself as "John Carlos Miller." A police photograph was taken of defendant at that time, trial exhibit 130, and it was admitted into evidence after Nowak testified that it depicted defendant. Nowak further testified that he next encountered defendant on September 9, 2006, when he pulled defendant over for a traffic stop. On this occasion, defendant identified himself as "Michael Thomas." Nowak, recalling his previous interaction with defendant in July 2006, confronted defendant about the name discrepancy and arrested him for providing false information to a police officer after defendant conceded that he had lied about his identity. Nowak identified defendant in the courtroom as the person he twice encountered in Pennsylvania.

In a pretrial hearing, the same one in which the trial court ruled that the recordings were admissible, the court also denied defendant's motion seeking dismissal on

speedy trial grounds, and the parties and the court extensively discussed past extradition matters. As gleaned from that discussion, and as indicated in a Pennsylvania court document contained in the lower court record, defendant, under his real name of John Burton, signed a waiver of extradition on September 13, 2006, which was a few days after Officer Nowak had arrested him. It also appears from the discussion of the speedy trial matter that weapons charges were also pending against defendant in Allegheny County at the time. The extradition matter had pertained to the pending felony charges against defendant in Michigan. While defendant waived extradition in September 2006, a Pennsylvania judge stayed it "pending disposition of local charges." Pennsylvania authorities finally made defendant available for extradition sometime in 2008, at which point defendant fought extradition, eventually losing the battle. It was during defendant's imprisonment in Pennsylvania that the phone conversations took place, as testified to by Detective Thomas Leicht, an Allegheny County detective assigned to the Pennsylvania Bureau of Prisons.

During Detective Leicht's testimony, the prosecution was allowed to admit into evidence two photographs, trial exhibits 131 and 132, and the recorded telephone conversations, exhibit 133. An audiotape of the phone calls was played for the jury. The first photograph was a 1998 police mugshot of defendant relative to a Pennsylvania arrest, which predated the crimes committed in Detroit. Leicht testified that defendant identified himself as "John Miller" when arrested by Pennsylvania police in 1998. Leicht further testified that fingerprints established that the 1998 police photograph supposedly of "John Miller" was in truth a photograph of defendant John Burton. Although not entirely clear from the record, the second photograph was apparently a police photograph, or mugshot, of defendant following his arrest in Pennsylvania in September 2006. According to Leicht, the information contained alongside the 2006 mugshot reflected that the arrestee gave the name John Burton. Leicht stated that fingerprints established that the arrestee was indeed John Burton, as was the case with the 1998 mugshot, even though there were differences in the physical descriptions and information accompanying the 1998 and 2006 mugshots, *e.g.*, differences in height, weight, birthdates, and social security numbers. Detective Leicht explained that the identifying characteristics and information were supplied by defendant. Leicht opined that the person in the two police photographs was the same person sitting in the courtroom, defendant John Burton. With respect to the recordings, Leicht testified that they concerned phone conversations that occurred between April 2007 and April 2008 and that when he receives a subpoena for a prisoner's phone records, he pulls the "pin number [PIN] for that individual." Although not stated directly by Leicht, it is implicit in his testimony, and no one argues to the contrary, that the recordings were of phone conversations by a male using the PIN assigned to defendant John Burton. Recall that Pennsylvania authorities were fully aware back in September 2006 that their prisoner was John Burton. The transcripts of the

recordings show that the female speaker referred to the male as "Carlos" multiple times, but she never referred to him as John, John Burton, or John Miller.

Defendant argues that a prisoner's PIN can be used by prisoners other than the prisoner assigned to the PIN, that no one identified the male voice on the recordings as defendant's voice, that the reference to "Carlos" in the recordings is too tenuous to show a connection to defendant, and that the record leaves doubt, given the conflicting descriptions and information as to the 1998 and 2006 mugshots, that John Carlos Miller and defendant John Burton are one in the same.

While the prosecution failed to find a witness who could identify defendant's voice on the recordings, defendant was imprisoned in Pennsylvania when the calls were made, the prison PIN used by the caller was assigned to defendant, defendant had used the name "Carlos" as an alias in the past, the name "Carlos" is referenced by the female speaker in the phone conversations multiple times, the photographs and police testimony connected defendant to the phantom "John Miller" and "John Carlos Miller," and the fingerprint testimony linking defendant to the aliases was not contradicted. Moreover, the male heard on the recordings spoke of the need to obtain $35,000 to acquire false identification, which was necessary if he wanted a future that did not entail constant running to avoid imprisonment, spoke of the FBI searching for him, spoke of being "on the run for bodies," and spoke of not returning to the "D" because he had too "many enemies" there. Taking into consideration these statements and all of the other evidence referenced above, it was not error for the trial court to conclude that the record was sufficient to authenticate the recordings, with defendant being identified as the male speaker in the telephone calls. Although it is perhaps within the realm of possibility that an inmate other than defendant was using the PIN and making the phone calls, it seems unlikely under the circumstances and, regardless, given satisfaction of the threshold for admission, any doubts were a matter for the jury to ponder, not the trial court, nor this Court.

Accordingly, defense counsel's performance did not fall below an objective standard of reasonableness under prevailing professional norms and his failure to object to the admission of the recordings was not outcome-determinative because any objection to the recordings would have been futile. The trial court, as the court itself noted on remand, would have admitted the recordings, and properly so, had defense counsel objected. Therefore, any objection to the authenticity of the recordings would have lacked merit, and defense counsel was therefore not obligated to raise the issue. *Ericksen*, 288 Mich App at 201.

*Burton*, 2012 WL 4210313 at *1-5 (footnote in original).

The state court's decision is neither contrary to Supreme Court precedent nor an

unreasonable application of federal law or the facts. A federal court may only grant habeas relief

to a person who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993). "Trial court errors in state procedure or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *Estelle*, 502 U.S. at 69-70); *see also Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

Thus, to the extent that Petitioner contests the state court's decision under the Michigan Rules of Evidence and its interpretation of state law, he is not entitled to relief. It is well-settled that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). State courts are the final arbiters of state law and federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). Habeas relief does not lie for perceived errors of state law. *Estelle*, 502 U.S. at 67-68. Petitioner fails to state a claim upon which relief may be granted as to any state law issue.

Petitioner also fails to establish a due process violation. The admission of the disputed evidence did not render his trial fundamentally unfair. The jail audio recordings were relevant,

22

admissible, sufficiently authenticated, and not unduly prejudicial under the Michigan Rules of Evidence. The defense was free to challenge their relevance and to argue that Petitioner was not the male caller in those recordings during trial. The admission of the jail audio recordings was thus appropriate under state law and did not deprive Petitioner of a fundamentally fair trial.

Petitioner relatedly asserts that trial counsel was ineffective for failing to properly object to the admission of the evidence at trial. The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id*.

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id*. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689. There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

23

*Id*. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

A federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

Given the state trial courts' rulings, as well as this Court's determination, that the underlying evidentiary claim lacks merit, Petitioner cannot establish that trial counsel erred and/or that he was prejudiced by counsel's conduct. Counsel cannot be deemed deficient for failing to make a meritless argument or a futile objection. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."); *United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000). Petitioner fails to establish that trial counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on these claims.

### B.    Admission of Mug Shot Evidence

Petitioner also asserts that he is entitled to habeas relief because the trial court erred in

admitting the 1998 Pennsylvania mug shot into evidence at trial because it was not him and constituted false evidence.  Respondent contends that this claim lacks merit.

Petitioner first raised this claim on direct appeal of his convictions.  The Michigan Court of Appeals determined that the evidence was properly admitted under state law and that any potential error was harmless and denied relief.  The court explained:

> Next, in a Standard 4 brief, defendant argues that the trial court erred in allowing the prosecution to introduce knowingly false evidence in the form of the 1998 Pennsylvania mugshot. Defendant maintains that the mugshot was not him and that the trial court, in a sidebar conference that took place immediately after the court overruled an objection to the admission of the photograph, expressly acknowledged that it was not a mugshot of defendant. Defendant also argues, in the alternative, that the trial court simply erred in admitting the photograph irrespective of any perjury or misconduct.
>
> Although the record reveals that there was a side-bar discussion regarding photographs, the record does not contain the comments allegedly made by the trial court, nor does defendant cite any transcript pages on the issue, and the court indicated directly after the conference that the photographs were admissible. Moreover, there was uncontradicted testimony that the fingerprints associated with the photographs, including the 1998 mugshot, were defendant's fingerprints. Additionally, Detective Leicht testified that "they look like it to me" when asked if the photographs pictured defendant.[2] There is also the fact that defendant used the alias of John Carlos Miller in 2006, as indicated in the testimony of Officer Nowak, making it unlikely under the circumstances that the person arrested in 1998 using the name "John Miller" was someone other than defendant. "It is well settled that a conviction obtained through the knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment." *People v. Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009). Here, however, there is absolutely no evidence whatsoever that perjured testimony was elicited or that false evidence was presented. Furthermore, given the other strong evidence of identification, there is no reasonable likelihood that the evidence, even if presumed to be false and perjured, would have affected the judgment of the jury. *Id*.

---

[2]We also note that defense counsel objected to admission of the photographs, including the 1998 mugshot, on the basis that admission would violate a discovery order and not that the photographs did not depict defendant. In fact, after the side-bar conference, defendant proclaimed that he had no objection when the photographs were actually admitted through Leicht.

Finally, the trial court did not err or abuse its discretion in admitting the 1998 mugshot as it was relevant to the issue of defendant's use of aliases and on the matter regarding the PIN and associated telephone recordings, and the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. MRE 401–403.

*Burton*, 2012 WL 4210313 at *5 (footnote in original).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. As discussed, a federal court may only grant habeas relief to a person who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *Estelle*, 502 U.S. at 67–68; *Serra*, 4 F.3d at 1354. "Trial court errors in state procedure or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo*, 365 F.3d at 494 (quoting *Estelle*, 502 U.S. at 69-70); *see also Wynne*, 606 F.3d at 871 (citing *Bey*, 500 F.3d at 519-20); *Bugh*, 329 F.3d at 512.

Thus, to the extent that Petitioner contests the state court's decision under the Michigan Rules of Evidence and its interpretation of state law, he is not entitled to relief. It is well-settled that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review." *Bradshaw*, 546 U.S. at 76; *Sanford*, 288 F.3d at 860. State courts are the final arbiters of state law and federal courts will not intervene in such matters. *Lewis*, 497 U.S. at 780; *Oviedo*, 809 F.2d at 328. Habeas relief does not lie for perceived errors of state law. *Estelle*, 502 U.S. at 67-68. Petitioner fails to state a claim upon which relief may be granted as to any state law issue.

Petitioner also fails to establish a due process violation. The admission of the disputed evidence did not render his trial fundamentally unfair. The mug shot was relevant, admissible, and not unduly prejudicial under Michigan Rules of Evidence 401, 402, and/or 403. The defense was free to challenge its relevance and to argue that Petitioner was not the man depicted in the photograph during trial. The admission of the 1998 mug shot was thus appropriate under state law and did not deprive Petitioner of a fundamentally fair trial.

Moreover, even if its admission was erroneous, any such error was harmless. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Fry v. Pliler*, 551 U.S. 112, 117-18 (2007) (confirming that the *Brecht* standard applies in "virtually all" habeas cases); *Ruelas v. Wolfenbarger*, 580 F.3d 403, 411 (6th Cir. 2009) (ruling that *Brecht* is "always the test" in the Sixth Circuit). In this case, the prosecution presented significant evidence of Petitioner's guilt, including three eyewitnesses, one victim's piece of identification, Petitioner's flight from the area and use of aliases when confronted by Pennsylvania police, and the jail audio recordings. Given such circumstances, any error in admitting the 1998 mug shot did not have a substantial effect or influence on the jury's verdict at trial. Habeas relief is not warranted on this claim.

### C.     Procedural Default & Merits of Remaining Timely Claims

Petitioner also asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to properly object to the admission of the 1998 mug shot and that the prosecutor engaged in misconduct by introducing and relying upon the jail audio recordings and the mug shot evidence at trial. Respondent contends that these claims are barred by procedural default and that they lack

merit.

Petitioner first raised these claims as distinct issues in his motion for relief from judgment and the state trial court denied relief pursuant to Michigan Court Rule 6.508(D)(2) and (3) because Petitioner raised similar issues concerning the jail audio recordings and the mug shot evidence on direct appeal and, to the extent that he did not raise these specific issues, he failed to establish cause and prejudice for not doing so. *Burton*, No. 09-028803-01-FC at *5-7.

Federal habeas relief may be precluded on a claim that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991). The doctrine of procedural default applies when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001). "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last explained state court ruling is used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).

Petitioner first presented these claims as distinct issues to the state courts in his motion for relief from judgment. The Michigan Supreme Court denied relief pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice

resulting therefrom. Mich. Ct. R. 6.508(D)(3). The Sixth Circuit has held that the form orders used by the Michigan appellate courts to deny leave to appeal in this case is unexplained because the citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a rejection on the merits. *Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc); *see also Wilson v. Sellers*, _ U.S. _, 138 S. Ct. 1188, 1193-94 (2018) (ruling that, in reviewing the basis for a summary appellate order of affirmance, a habeas court should apply *Ylst* and "look through" the unexplained order to the last reasoned state court decision). Consequently, under *Guilmette*, the Court must "look through" any unexplained orders of the Michigan appellate courts to the state trial court's decision to determine the basis for the denial of state post-conviction relief.

In this case, the state trial court denied relief pursuant to Michigan Court Rule 6.508(D)(2) and (3) finding, in relevant part, that Petitioner failed to establish cause and actual prejudice for his failure to raise the claims on direct appeal of his convictions. The state courts thus clearly relied upon a procedural default to deny Petitioner relief on these claims. Accordingly, the claims are procedurally defaulted.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991); *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). To establish cause, a petitioner must establish that some external impediment frustrated his or her ability to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A petitioner must present a substantial reason to excuse the default. *Amadeo v. Zant*, 486

U.S. 214, 223 (1988).  Such reasons include interference by officials, attorney error rising to the level of ineffective assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably available.  *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991).

Petitioner asserts ineffective assistance of appellate counsel as cause to excuse this procedural default.  The right to the effective assistance of counsel includes the right to the effective assistance of appellate counsel on direct appeal.  *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  In order to establish ineffective assistance of counsel, a habeas petitioner must show "that counsel's performance was deficient . . . [and] that the deficient performance prejudiced the defense."  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  In determining whether counsel's performance was deficient,

> [t]he court must ... determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance .... At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland,* 466 U.S. at 690.  Judicial scrutiny of counsel's performance is thus "highly deferential." *Id*. at 689.  The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.  *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the … goal of vigorous and effective advocacy …. Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id*. at 754.  Strategic and tactical choices regarding which issues to pursue on appeal are "properly

left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner fails to show that by omitting the claims presented in his motion for relief from judgment, appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel raised substantial issues on direct appeal concerning the admission of the jail audio recordings and the effectiveness of trial counsel (Petitioner raised the mug shot evidentiary claim in a supplemental brief). The defaulted claims, which concern the effectiveness of trial counsel relative to the 1998 mug shot and the conduct of the prosecutor relative to the jail audio recordings and the mug shot evidence, are not clearly stronger than those raised by counsel nor are they "dead-bang winners." To be sure, Petitioner did not raise the claims on direct appeal himself despite filing his own supplemental brief. *See, e.g., Jones v. Palmer*, No. 2:13-CV-13864, 2016 WL 98157, *9 (E.D. Mich. Jan. 8, 2016) (petitioner's failure to raise defaulted claim in his supplemental brief on appeal undermines assertion of cause and prejudice to excuse procedural default); *Rockwell v. Palmer*, 559 F. Supp. 2d 817, 834 (W.D. Mich. 2008) (petitioner did not show cause for his failure to raise defaulted claim on direct appeal where he had filed briefs on his own

behalf raising other claims that had not been asserted by his appellate counsel, but offered no explanation for his failure to raise the defaulted claim at the same time). Additionally, the Michigan Court of Appeals ruled that the underlying evidentiary claims lack merit. Appellate counsel cannot be deemed ineffective for failing to raise issues that lack merit. *Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013); *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010).

Furthermore, even if appellate counsel erred, Petitioner cannot show that he was prejudiced by appellate counsel's conduct (or demonstrate prejudice to excuse the procedural default) because the defaulted claims lack merit.

Petitioner asserts that trial counsel was ineffective for failing to properly object to the admission of the 1998 mug shot. As discussed, in order to establish that trial counsel was ineffective, a habeas petitioner must prove that counsel's performance was deficient, falling below an objective standard of reasonableness and must prove that counsel's performance prejudiced the defense, involving errors so serious that they deprived the petitioner of a fair trial. *Strickland*, 466 U.S. at 687. Given the Michigan Court of Appeals' ruling and this Court's determination that the underlying evidentiary claim lacks merit, Petitioner cannot establish that trial counsel was deficient and/or that he was prejudiced by counsel's conduct. Counsel cannot be deemed ineffective for failing to make a futile or meritless objection. *Coley*, 706 F.3d at 752; *Steverson*, 230 F.3d at 225.

Petitioner asserts that the prosecutor engaged in misconduct by introducing and relying upon the jail audio recordings and the 1998 mug shot evidence at trial. The Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or

remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*); *see also Parker v. Matthews*, 567 U.S. 37, 45 (2012) (confirming that *Donnelly/Darden* is the proper standard).   In this case, given the Michigan Court of Appeals' ruling and this Court's determination that the underlying evidentiary claims lack merit, Petitioner cannot establish that the prosecutor engaged in misconduct which rendered his trial fundamentally unfair.  It is well-settled that a prosecutor's good faith effort to admit evidence does not constitute misconduct, particularly where, as here, the trial court admits the evidence. *See Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008) (holding that "[a] prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings"). Petitioner fails to show that the prosecutor's conduct was improper, let alone unfair, and the record provides no indication that the prosecutor acted in bad faith.  Petitioner thus fails to establish cause and prejudice to excuse this procedural default.

Petitioner also fails to demonstrate that a fundamental miscarriage of justice occurred.  The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Murray*, 477 U.S. at 479-80.  To be credible, such a claim requires a petitioner to provide new, reliable evidence that was not presented at trial. *Schlup*, 513 U.S. at 324.  Moreover, actual innocence means factual innocence, not mere legal insufficiency. *Bousley*, 523 U.S. at 623.  As discussed with respect to the statute of limitations issue, Petitioner makes no such showing.  These claims are thus barred by procedural default, otherwise lack merit, and do not warrant habeas relief.

## V.      Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims.  Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the Amended Petition for a Writ of Habeas Corpus.

Before Petitioner may appeal the Court's decision, a Certificate of Appealability ("COA") must issue.  28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A federal court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a district court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  When a district court denies relief on procedural grounds, a COA should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  *Slack*, 529 U.S. at 484-85.  Having considered the matter, the Court concludes that Petitioner fails to make a substantial showing of the denial of a constitutional right as to his habeas claims and that reasonable jurists could not debate the correctness of the Court's procedural rulings.  Accordingly, the Court **DENIES** a COA.

Lastly, the Court concludes that an appeal from this decision cannot be taken in good faith.  Fed. R. App. P. 24(a).  Accordingly, the Court **DENIES** Petitioner leave to proceed *in forma pauperis* on appeal.

**IT IS SO ORDERED**.

s/ Victoria A. Roberts
VICTORIA A. ROBERTS
UNITED STATES DISTRICT JUDGE

Dated:  May 28, 2020